IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD F. MYLAND | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| KILOLO KIJAKAZI,<br>Commissioner of Social Security,[1] | : | No. 20-cv-02454-RAL |
| Defendant | : | |

Richard A. Lloret　　　　　　　　　　　　　　　　　　　　　　August 5, 2021
U.S. Magistrate Judge

## MEMORANDUM OPINION

## FACTUAL AND PROCEDURAL HISTORY

Richard Myland, the plaintiff, quit a job as a stock clerk with Coca-Cola in 2013, when he was 43 years old. In 2016 Mr. Myland filed an application for disability insurance benefits (DIB), alleging disability as of 2013, when he quit his job, due to back pain and left leg weakness. R. 159, 173, 177-82. The state agency charged with making the initial disability determination denied his application, finding him not disabled. R. 79. Mr. Myland requested review, and an Administrative Law Judge (ALJ) held a hearing in August of 2018, at which Mr. Myland and a vocational expert testified. R. 34-63. The ALJ issued a decision in January of 2019 finding that Mr. Myland could perform a significant number of jobs in the national economy, from 2013 through May 9, 2018,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action.  No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g). (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

the date Mr. Myland turned 50. R. 26-28, Finding Nos. 7-10. Thus, Mr. Myland was not "disabled" at step five of the disability evaluation process.[2] *Id*.

But there was a twist. Because the ALJ found that Mr. Myland could only perform sedentary work, with some additional restrictions, as of May 9, 2018 (the date that Mr. Myland turned 50 years old) the applicable regulations created a presumption that no jobs existed in the national economy that he could perform. Because this was so, Rule 201.14 directed a finding of "disabled" as of May 9, 2018. R. 29, Finding Nos. 11-12. What the parties are really fighting about is whether the ALJ was right to find Mr. Myland not disabled before he turned 50.

The Appeals Council denied Mr. Myland's request for review in April 2020. R. 1-7. This timely appeal followed.

## STANDARD OF REVIEW

Mr. Myland has the burden of showing that the ALJ's decision was not based on "substantial evidence." 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Mr. Myland acknowledges this well-known standard. Plaintiff's Brief ("Pl.Br."), at 6-7 (Doc. No. 12). "Substantial evidence" is not a high standard. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations and internal quotations omitted).

---

[2] The five-step disability evaluation process is described in *Hess v. Commissioner Social Security*, 931 F.3d 198, 201-02 (3d Cir. 2019). "At step five, the ALJ examines whether the claimant 'can make an adjustment to other work[,]' considering his '[RFC,] ... age, education, and work experience[.]" *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert.' *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled." *Id*. at 202.

## DISCUSSION

Despite acknowledging the correct standard of review, Mr. Myland argues that there is substantial evidence supporting a finding of disability before Mr. Myland turned 50. Pl.Br. at 7. This misses the point. I happen to agree with the ALJ's disability assessment, but even if I did not, I could not reverse simply because I disagreed with the ALJ. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). I may only reverse if I find that there is no substantial evidence supporting the ALJ's decision. There can be, and often is, evidence both supporting and undercutting disability. The ALJ weighed the evidence, pro and con, and made a decision. That is not what I do on appeal. Instead, I just review to see if the ALJ's decision was supported by substantial evidence. It was, in this case, and because it was, I will affirm.

Mr. Myland's argument is unconvincing for two reasons. First, Mr. Myland bears the burden of demonstrating that any reasonable adjudicator would be compelled to reject the ALJ's determination. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). Mr. Myland's conclusory argument that a finding of disability is supported by the record does not address or satisfy this burden. The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). By arguing a standard that does not apply, and by arguing it in conclusory fashion, rather than pointing out errors under the correct standard of review and supporting his argument with citations to the record, Mr. Myland fails to meet his burden of production and persuasion. *See United States v. Grados*, 2021 WL 231373, at *3 (W.D.Pa. 2021) ("I will not scour the record where movant has not cited it to see if the record might relate in some way to what he might be driving at") (citations and internal quotations omitted). The

3

consequence is that Mr. Myland has forfeited[3] a merits challenge focused on the correct standard of review.

Second, my examination of the record based on the correct standard of review reveals that there was substantial evidence supporting the ALJ's determination.

Mr. Myland's argument is based on two contentions. His first contention is that he "had significant bilateral hand issues affecting the use of both of his hands in 2016." Pl.Br. at 7. Mr. Myland's second contention is that he "suffered from severe lumbar and cervical issues prior to his 50th birthday which affected his ability to walk and stand." *Id.* at 8. Mr. Myland suggests that the ALJ did not properly evaluate the "totality of the record." *Id.* at 8. My own review convinces me that the ALJ did a thorough job of evaluating all the evidence and that the ALJ's opinion is supported by substantial evidence.

The ALJ carefully analyzed the evidence about Mr. Myland's hand and back conditions and concluded that the conditions were not disabling. R. 17-18 (hand); 21-26 (lumbar and cervical spine). As for Mr. Myland's purported hand condition, the ALJ noted that Mr. Myland's reported grip strength was 5/5 on both the left and the right, and that he reported driving a riding lawn mower for 25 minutes while mowing his lawn. R. 17. He also reported participating in Tai Chi, a martial art which required use of the hands and legs. *Id.* at 18.

---

[3] Some courts call it a waiver. I doubt that Mr. Myland's briefing deficiencies amounted to an intentional relinquishment of a known right. *See United States v. Goldberg*, 67 F.3d 1092, 1099-1100 (3d Cir. 1995) (explaining the difference between waiver and forfeiture). It seems more appropriate to call it a forfeiture, because a failure to follow ordinary briefing rules can result in the forfeiture of rights one might have asserted in the prescribed time and manner, whether or not one intended to waive those rights. *Id.*; *see Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 187 (3d Cir. 2019) (failure to timely assert a right results in forfeiture) (internal quotation and citation omitted). For instance, when a party fails to raise an argument in an opening brief, or fails to adequately develop an argument, the issue is forfeited. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146-47 (3d Cir. 2017).

The vast bulk of the medical records between 2013 and 2018 revealed minimal, if any, complaints about hands and arms. *Id.* at 21-26. Dr. Halpern focused on Mr. Myland's balance issues, back pain, and leg weakness. R.. 348-49. Dr. Moyer diagnosed midline low back pain without sciatica and radiculopathy with lower extremity symptoms. R. 374. Dr. Chapis reported that Mr. Myland had no cervical pain, had full reflexes, intact sensation, and full motor strength in his shoulders, elbow, wrists, and grip. R. 27; 501-02. Mr. Myland's sister did not report any problems with the use of his hands and arms. R. 202-209. The minimal complaints of hand problems were not supported by objective medical evidence. The ALJ was justified in her conclusion regarding Mr. Myland's alleged hand condition.

The ALJ also carefully considered Mr. Myland's testimony about his back pain (R. 21-22), as well as Mr. Myland's treatment history with Dr. Moyer, an orthopedic surgeon, and Dr. Halpern, a neurologist. R. 22. Dr. Halpern conducted several diagnostic tests, including pelvis, hip, and lumbar spine x-rays, a brain MRI, cervical and thoracic spine MRIs. R. 22-23. The MRI ordered by Dr. Halpern revealed a "1.5 cm long diffusely enhancing intramedullary mass" at the T2 level of Mr. Myland's spine. R. 311. Dr. Halpern referred Mr. Myland to a neurosurgeon, Dr. Weaver, who recommended surgery, which Mr. Myland declined. R. 23. The mass was never definitively diagnosed. Dr. Halpern thought it was a neoplasm - a meningioma, ependymoma, or low-grade glioma - but did not believe the lesion was aggressive, given the three-year history of symptoms and lack of cord edema. R. 23; 293-94.

The ALJ also reviewed Mr. Myland's history with Dr. Chapis, a pain management specialist whom Mr. Myland saw in July 2017. R. 23. Physical testing was normal, with a

5

fair range of motion, no pain with cervical extension and a negative Spurling's test.[4] *Id.*; R. 501-02. Dr. Chapis concluded that Mr. Myland's low back pain was consistent with spondylosis and the doctor recommended medication, physical therapy, injections, and surgical intervention as treatment options. *Id.* The doctor recommended diagnostic lumbar facet joint injections to help evaluate the source of Mr. Myland's low back pain, but Mr. Myland declined. R. 23.

The ALJ noted that in January of 2018 Dr. Chapis ordered a lumbar MRI. R. 23; 478. The MRI revealed that the previously seen herniation at L2-L3 was no longer visible. R. 479. The MRI revealed a "tiny herniation" and "mild central stenosis" at L3-L4, and "mild foraminal narrowing at L2-3, L3-4, L45, and L5-S1." *Id.* Mr. Myland received the recommended lumbar facet joint injections in March and April of 2018, with variable pain improvement. R. 23; 446 (no relief from hip injection); 451 (50% relief from L5 injection). Mr. Myland reported good improvement of his pain when he took his medications regularly. R. 23; 447 (medication permits activities of daily living); 467 (reporting good control of symptoms when taking medication regularly, but the pain flares when he misses his medication); 490 (reporting good improvement of his symptoms).

The ALJ found that Mr. Myland's claims of disabling symptoms were not consistent with the record. *Id.* Mr. Myland claimed in his testimony that he could not bend at the waist or grip a steering wheel. *Id.* But in his function report, Mr. Myland

---

[4] "The Spurling test is one of the best-known and most widely used provocative tests for the assessment of the cervical spine." *Spurling Test*, Steven J. Jones; John-Mark M. Miller, https://www.ncbi.nlm.nih.gov/books/NBK493152/ accessed 8/2/2021 at 12:06 p.m. "A negative test is one in which the pain elicited is localized to the neck, or when no symptoms can be reproduced." *Id.*

stated he could clean his bathroom, kitchen, and do his laundry, all of which require bending. *Id.*; R. 185. He claimed trouble with the grip strength in his hands, but he drove a riding lawn mower, which required him to grip a steering wheel for 25 minutes. R. 24-25; R. 185. He reported participating in Tai Chi a martial art. *Id.* at 25; 470. His tested grip strength was 5/5 left and right. R. 25; 501. The ALJ took account of Mr. Myland's obesity when forming her opinion about his functional limitations. R. 24.

The ALJ considered and gave little weight to the opinion of Dr. Vasta, *Id.* at 26. Dr. Vasta had opined, in a "check the box" form, that Mr. Myland could not perform any gainful employment on a continuous and sustained basis. *Id.*; R. 530. The ALJ pointed out that Dr. Vasta's opinion about Mr. Myland's physical limitations was undercut by the medical records and functional reports in the record. R. 26. For instance, Mr. Myland had a wide variety of objective tests that revealed minimal, if any, loss of function. *Id.* The ALJ also thoroughly reviewed Mr. Myland's treatment with Dr. Vasta and gave Mr. Myland the benefit of the doubt about his claimed Lyme disease symptoms, even though there was no objective evidence of Lyme disease in the record. R. 24.

The state agency medical consultant, Dr. Smith, having reviewed Mr. Myland's medical records, opined that Mr. Myland would be able to perform work at a light exertional level. *Id.* at 25; R. 79. The ALJ gave Dr. Smith's opinion partial weight, holding that Mr. Myland could perform work at a lesser, "sedentary" exertional level, with some additional restrictions. R. 25-26.

The ALJ concluded that Mr. Myland was not disabled before his 50th birthday. R. 27-28. There were jobs in the national economy that the vocational expert testified Mr. Myland could perform, even given his functional limitation to no more than sedentary

work, with additional limitations. *Id*. As of May 9, 2018, the date of his 50th birthday, given the same functional limitations, the ALJ found that Mr. Myland was presumptively disabled under Medical-Vocational Rule 201.14. *Id*. at 28.

## CONCLUSION

Because Mr. Myland has failed to demonstrate that the ALJ's determination was unsupported by substantial evidence, his appeal fails. My review of the record convinces me that the ALJ's determination was supported by substantial evidence. I therefore affirm the Agency decision and will enter judgment against Mr. Myland.

BY THE COURT:


_s/Richard A. Lloret_
RICHARD A. LLORET
U.S. Magistrate Judge